UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CRISTINA CORDERO, individually; and as guardian and next friend of the minor children C.J. and J.J., | ) ) ) ) | |
| | ) | Case No:  1:17-cv-254-LG-RHW |
| Plaintiff, | ) ) | Judge: |
| v. | ) ) | Magistrate Judge: |
| PICAYUNE SCHOOL DISTRICT; and FRANK FORD, in his official capacity as chief executive of the PICAYUNE SCHOOL DISTRICT, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

1.      Plaintiff Cristina Cordero (hereafter "Ms. Cordero") is a deaf individual for whom American Sign Language (hereafter "ASL") is her native language and primary means of communication. The minor children C.J. and J.J. are Ms. Cordero's biological children; both are hard of hearing. ASL is the native language and primary means of communication for both C.J. and J.J. Both children are students in the Picayune School District, which has failed to reasonably accommodate the individual needs of Ms. Cordero, C.J., and J.J. for ASL interpretation services, in violation of Title II of the Americans with Disabilities Act (hereafter "ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 (hereafter "Rehabilitation Act"), 29 U.S.C. § 794.

2.      Ms. Cordero brings this action to compel the Picayune School District (hereafter "the District") to cease its unlawful practices and implement policies and procedures that will

-1-

ensure effective communication, full and equal enjoyment, and a meaningful opportunity for Deaf individuals to participate in and benefit from the programs, activities, and services offered by the District. Ms. Cordero seeks declaratory, injunctive, and equitable relief, compensatory damages (including nominal damages), and attorneys' fees and costs to redress the unlawful discrimination she and her children have suffered on the basis of their disability.

## THE PARTIES

3.     Plaintiff Cristina Cordero (hereafter "Ms. Cordero") is an individual residing in Picayune, Mississippi with her children C.J. and J.J. Ms. Cordero brings this lawsuit both individually and in her capacity as the natural parent, guardian, and next friend of the minor children C.J. and J.J. Ms. Cordero is afflicted with branchio-oto-renal syndrome and is deaf. She is substantially limited in the major life activities of hearing, speaking, and reading, and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

4.     The minor child C.J. is eleven (11) years old. He is afflicted with branchio-oto-renal syndrome and is currently hard of hearing, with a rapidly progressive form of hearing loss. C.J. is substantially limited in the major life activities of hearing, speaking, and reading, and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

5.     The minor child J.J. is fourteen (14) years old. He is afflicted with branchio-oto-renal syndrome and hard of hearing. J.J. is substantially limited in the major life activities of hearing, speaking, and reading, and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

6.     Defendant Picayune School District (hereafter "the District") is the political subdivision which operates the schools where C.J. and J.J. have been enrolled, namely Roseland

Park Elementary, Picayune Junior High School, and Picayune Memorial High School. The District is a public entity within the meaning of the ADA.

7.      Defendant Frank Ford is the chairperson of the Board of Trustees of the District, and is therefore its chief executive officer. Plaintiff does not seek damages from Defendant Frank Ford.

8.      As the operator and administrator of the instructional and educational programs, activities, and services, offered in Picayune municipal schools, the District is obligated to comply with the requirements of the ADA.

9.      As the recipient of federal funding, the District is subject to the requirements of the Rehabilitation Act.

## JURISDICTION & VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under federal law.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

12.     The minor children C.J., and J.J. are both hard of hearing. Their biological parents are both deaf. American Sign Language (hereafter "ASL") is the native language for both children, and ASL remains their primary method of communication.

13.     C.J. and J.J. each have limited proficiency in spoken and written Standard American English (hereafter "SAE"), and require auxiliary aids and services to communicate effectively in an instructional and/or educational setting.

14.     Ms. Cordero has limited proficiency in SAE, and requires auxiliary aids and services to communicate effectively with the educators and administrators who implement and oversee the instructional and educational programs, activities, and services offered by the District to her children.

15.     Upon information and belief, Ms. Cordero initially requested that the District provide ASL interpretation services for C.J. when he enrolled as a student at Roseland Park Elementary in March of 2015.

16.     Upon information and belief, Ms. Cordero has made numerous requests that the District provide ASL interpretation services for herself as a parent whose children are enrolled in schools at the District.

17.     Upon information and belief, Ms. Cordero initially requested that the District provide ASL interpretation services for J.J. when he enrolled as a student at Picayune Junior High in August of 2015.

18.     Upon information and belief, the District refused Ms. Cordero's request for accommodation of the disabilities of C.J. and J.J.

19.     Upon information and belief, prior to and throughout the 2016-2017 school year, Ms. Cordero has repeatedly re-urged her request that the District provide ASL interpretation services for C.J. at Roseland Park Elementary and for J.J. at Picayune Junior High.

20.     Upon information and belief, Ms. Cordero has made numerous requests for ASL interpretation services for C.J. and J.J. with their teachers, principal, and the school board, using email and Video Relay Service telephone calls, by making in-person visits at which written notes were exchanged with school administrators and educators, and by sending written notes to school with the children.

21.     As a result of Ms. Cordero's repeated requests, the District is aware that both C.J. and J.J. are hard of hearing and that both minor children require ASL interpretation services to effectively communicate.

22.     Upon information and belief, in or around December, 2016, the District temporarily moved J.J. to the front of his classroom at Picayune Junior High rather than providing ASL interpretation services.

23.     Upon information and belief, during the 2016-2017 school year, the District implemented the use of an FM system assistive hearing device as an auxiliary aid for J.J. at Picayune Junior High rather than providing ASL interpretation services.

24.     Upon information and belief, J.J.'s teacher at Picayune Junior High was not adequately trained in the use of the FM system, and refused to cooperate with J.J. in finetuning and troubleshooting the technology to ensure that the FM system was properly functioning.

25.     Due to the absence of ASL interpretation services, J.J. has experienced difficulty effectively communicating with his teachers regarding deadlines and other expectations regarding his assignments, with an adverse effect on his academic performance.

26.     Upon information and belief, in December 2016, C.J.'s 5th grade class at Roseland Park Elementary put on a Christmas play for which participation was mandatory.

27.     Upon information and belief, C.J. was required to attend practices for the play, but he was unable to meaningfully participate in the practices due to the absence of ASL interpretation services.

28.     Upon information and belief, C.J. was unable to participate in the Christmas play performance with his classmates, and instead had to sit with his family in the audience. C.J.'s

inability to share the experience of practicing and performing a Christmas play with his 5th grade classmates was directly attributable to the District's failure to provide ASL interpretation services.

29.     Upon information and belief, the District sent C.J. to an ear, nose, and throat specialist, Dr. Luke Thompson, in February 2017, as a result of Ms. Cordero's repeated requests for ASL interpretation services, to document the extent of C.J.'s hearing loss.

30.     Despite Ms. Cordero's request for a copy of the audiology report prepared by Dr. Thompson, the District has failed to provide same to her.

31.     Upon information and belief, Dr. Thompson opined that C.J.'s hear loss will continue to decline at a rapid pace, and that he will be completely deaf within 12 months.

32.     Upon information and belief, Dr. Thompson suggested cochlear implants for C.J., and the District has echoed this suggestion. Ms. Cordero rejects the notion that C.J. should conform to the expectations of mainstream hearing culture rather than have his disability accommodated as required by Federal civil rights laws.

33.     Upon information and belief, for the 2017-2018 school year, Roseland Park Elementary has assigned a Special Education Assistant to C.J. who is not a Certified ASL interpreter.

34.     Upon information and belief, on August 16, 2017, C.J. was the victim of a bullying incident at Roseland Park Elementary and received an in-school suspension as discipline without being provided an opportunity to effectively communicate his version of the events that led to a physical altercation between himself and another student.

35.     Upon information and belief, on August 25, 2017, C.J. asked his teacher, Mrs. Park, if he could sit at the front of the classroom, and Mrs. Park responded by calling attention to C.J.'s

disability and referring to him in front of his classmates as a "special needs kid," causing C.J. great distress and embarrassment.

36.     Upon information and belief, the District has repeatedly responded to Ms. Cordero's requests for ASL interpretation services for C.J. and J.J. with the suggestion that the children should enroll at the Mississippi School for the Deaf. Ms. Cordero rejects the notion that her children should be isolated as opposed to obtaining integrated access to the instructional and educational programs, activities, and services, offered by the District.

37.     As a result of the District's failure to ensure effective communication with C.J. and J.J., the minor children have received and continue to receive educational and instructional services that are objectively substandard and inferior to such services provided to individuals who are hearing.

38.     Upon information and belief, Ms. Cordero has repeatedly requested ASL interpretation services for herself as a parent of children enrolled in the District's schools, but the District has failed and/or refused to provide her with ASL interpretation services for various open house events, awards ceremonies, events at which students' math and science work is exhibited, meetings concerning C.J.'s Individualized Education Plan, and other such events at which hearing parents can readily participate.

39.     Upon information and belief, the District failed to provide ASL interpretation services at the Christmas program put on by the students at Roseland Park Elementary in December, 2016.

40.     Upon information and belief, Ms. Cordero was advised via email that the District would have an ASL interpreter present for J.J.'s freshman orientation at Picayune High on August 1, 2017, but when she arrived there was no interpreter.

41.     Upon information and belief, Ms. Cordero waited for an interpreter to arrive so that she could participate in J.J.'s freshman orientation, only to be told by the District that it was her responsibility to have made arrangements for an ASL interpreter.

42.     Upon information and belief, on August 16, 2017, an administrator at Roseland Park Elementary communicated with Ms. Cordero via text-message concerning a physical altercation between C.J. and another student, rather than utilizing a Video Relay Service telephone call, which would have offered the most immediate and effective means of communication in such a sensitive, urgent situation.

43.     Upon information and belief, Ms. Cordero appeared for a meeting with educators and administrators at Roseland Park Elementary on August 21, 2017 and, due to the District's failure to ensure effective communication with Ms. Cordero, there was a misunderstanding regarding the purpose of the meeting.

44.     Upon information and belief, an ASL interpreter was present at the August 21, 2017 meeting at with educators and administrators at Roseland Park Elementary, and Ms. Cordero used the opportunity to once again re-urge her request for ASL interpretation services for C.J., but she was told that the request could not be documented at the meeting.

45.     Upon information and belief, the District has repeatedly responded to Ms. Cordero's requests for ASL interpretation services with the assertion that it does not have adequate funding for the auxiliary aids necessary to ensure effective communication with Ms. Cordero, C.J., or J.J.

46.     Upon information and belief, the District has engaged in several ineffective means of communication with Ms. Cordero, including but not limited to: in August, 2016, the District attempted to utilize another deaf individual as an interpreter for a meeting with Ms. Cordero

concerning C.J.'s Individualized Education Plan; communicating with Ms. Cordero via text-message rather than telephone utilizing a Video Relay Service; communicating with Ms. Cordero at in-person meetings via note-passing; relying on Ms. Cordero's alleged ability to read lips at in-person meetings; and on several occasions various educators and administrators have asked J.J. to serve as an interpreter for Ms. Cordero.

47.     Ms. Cordero has been denied ASL interpretation services for events and meetings at the District's schools on so many occasions that she has lost count. As a result of the District's failure and/or refusal to provide ASL interpretation services to Ms. Cordero, her efforts to be an involved, conscientious parent have been thwarted. Ms. Cordero has not been afforded an equal opportunity to participate and understand the educational programs, activities, and services offered by the District to her children.

48.     The District's failure to accommodate the disabilities of Ms. Cordero, C.J., and J.J. despite Ms. Cordero's repeated requests for ASL interpretation services constitutes unlawful discrimination on the basis of disability and amounts to deliberate indifference to the rights and communication needs of Ms. Cordero and her minor children.

49.     The District's intentional, purposeful discrimination has infringed upon the civil rights of C.J. and J.J. and has caused each to endure humiliation, anxiety, isolation, and emotional distress.

50.     The District's intentional, purposeful discrimination has infringed upon the civil rights of Ms. Cordero and caused her to endure frustration, anger, disappointment, humiliation, anxiety, isolation, and emotional distress.

## CLAIM 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

51.     Ms. Cordero repeats and realleges all preceding paragraphs in support of this claim.

52.     At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, *et seq.* has been in full force and effect and has applied to the District.

53.     At all times relevant to this action, the United States Department of Justice (hereafter "DOJ") regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the District.

54.     At all times relevant to this action, Ms. Cordero, C.J., and J.J. have each been substantially limited in the major life activities of hearing, speaking, and reading, and each is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. §§ 12102(1) and 12131(2).

55.     The District is a public entity within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

56.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

57.     Federal regulations implementing Title II of the ADA require that a public entity "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

58.     Federal regulations implementing Title II of the ADA provide that a public entity must "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities ... an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

59.     Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary" and specify that "[i]n determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities" and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

60.     Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

61.     Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

62.     The District has discriminated against Ms. Cordero, C.J., and J.J., on the basis of disability, in violation of Title II of the ADA and its implementing regulations.

63.     Ms. Cordero, C.J., and J.J. are therefore entitled to injunctive relief, compensatory and nominal damages, as well as an award of attorneys' fees and costs (including expert expenses) pursuant to Title II of the ADA.

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

64.     Ms. Cordero repeats and realleges all preceding paragraphs in support of this claim.

65.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to the District.

66.     At all times relevant to this action, the United States Department of Education (hereafter "DOE") regulations implementing Section 504 of the Rehabilitation Act, 34 C.F.R. Part 104, have been in full force and effect and have applied to the District's conduct.

67.     At all times relevant to this action, Ms. Cordero, C.J., and J.J. have had substantial limitations to the major life activities of hearing, speaking, and reading and have been individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9)(B).

68.     At all times relevant to this action, the District has been offering programs, services, activities, and/or accommodations receiving federal financial assistance pursuant to 29 U.S.C. § 794(b)(2)(B). Specifically, in the 2015-2016 school year, the District received $8,986,973.44 in federal funds. Accordingly, the District is obligated to comply with the requirements of the Rehabilitation Act.

69.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

70.     The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

71.     DOE regulations implementing the Rehabilitation Act provide that "[n]o qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance." 34 C.F.R. 104.4(a).

72.     DOE regulations implementing the Rehabilitation Act further provide that a recipient of Federal financial assistance "that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. 104.33(a).

73.     The District has discriminated against Ms. Cordero, C.J., and J.J., on the basis of disability, in violation of 29 U.S.C. § 794.

74.     Ms. Cordero, C.J., and J.J. are therefore entitled to recover compensatory and nominal damages for the injuries sustained as a result of the District's discriminatory conduct as hereinbefore alleged, pursuant to 29 U.S.C. § 794a(a).

75.     Ms. Cordero, C.J., and J.J. are further entitled to injunctive relief, as well as an award of attorneys' fees, and costs (including expert expenses) pursuant to the Rehabilitation Act, 29 U.S.C. § 794a(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Cordero respectfully prays that this Court grant the following relief:

a.      Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendants' policies, procedures, and practices have subjected Ms. Cordero, C.J., and J.J. to unlawful discrimination in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

b.      Issue an injunction ordering the Defendants:

i.  to accommodate the disabilities of Ms. Cordero, C.J., and J.J. and provide them with reasonable accommodations to ensure effective communication;

    ii.  to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Ms. Cordero, C.J., and/or J.J. or other deaf or hard of hearing individuals and their companions by failing to provide effective communication;

    iii.  to develop, implement, promulgate, and comply with a policy requiring that ASL interpretation services be provided to Ms. Cordero, C.J., and J.J.;

    iv.  to develop and implement a new system, or integrate into a currently existing system, a means of identifying individuals as deaf or hard of hearing, and assessing such individuals' communication needs and abilities;

    v.  to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf under the ADA and the Rehabilitation Act.

c.  Award to Ms. Cordero, C.J., and J.J.:

    i.  compensatory and nominal damages pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act from the District;

    ii.  all reasonable attorneys' fees and costs (including expert fees) incurred in preparing and pursing this action; further, if Plaintiff is successful, she seeks all fees and costs (including attorneys' fees) incurred in the enforcing and monitoring of Defendants' compliance with the Orders of this Court;

    iii.  interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv.  any and all other relief that this Court finds necessary and appropriate.

Dated: September 13, 2017

[Signature Block on Following Page]

Respectfully Submitted,

**Bizer & DeReus**
Attorneys for Plaintiff
Jacqueline K. Hammack (MS #104556)
jhammack@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: _____
        JACQUELINE K. HAMMACK